<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **INTERLINK PRODS. INTERNATIONAL, INC.,**<br><br>*Plaintiff*,<br><br>v.<br><br>**CATHY TRADING, LLC d/b/a WANTBA,**<br><br>*Defendant.* | **Civil Action No. 16-2153**<br><br>**OPINION** |

**THIS MATTER** comes before the Court on Counterclaim Defendant Cathy Trading, LLC's ("Cathy Trading") motion to dismiss Counterclaim Plaintiff Interlink Products International, Inc.'s ("Interlink") counterclaims under Fed. R. Civ. P. 12(b)(6). Dkt. No. 18. For the reasons set forth below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

**I.   BACKGROUND**

This is an unfair competition case between Interlink and Cathy Trading, two competing companies that make and sell showerheads. It arises out of claims that both parties misrepresented the amount of water flow in their products.

Interlink and Cathy Trading make showerheads that are regulated by the Energy Policy Act ("EPA"), 42 U.S.C. §§ 6291 et seq., a federal law promulgating energy conservation standards for various products and equipment. Among other things, the EPA requires manufacturers to limit the maximum water use of their shower heads to 2.5 gallons per minute ("g.p.m.") when measured at a flowing water pressure of 80 pounds per square inch. 42 U.S.C. § 6295(j).

In February 2016, Interlink filed this law suit, alleging that Cathy Trading underrepresents the flow rate of its showerheads. See Compl., Dkt. No. 1. According to Interlink, Cathy Trading

1

advertises that its showerheads have flow rates of 2.5 g.p.m. when they are actually much higher. Compl. ¶¶ 15, 31. Consumers believe they are buying energy efficient high pressure showerheads when, in reality, the showerheads use an excessive amount of water. Id. ¶¶ 15, 17. As such, they are allegedly tricked into buying Cathy Trading's showerheads instead of Interlink's EPA-compliant ones. Id. ¶ 38. Interlink claims that Cathy Trading has therefore engaged in false advertising under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and unfair competition under state statutory and common law.

Cathy Trading responded with three counterclaims based on similar theories. It asserts that Interlink advertises that its showerheads are EPA compliant even though "some" are not. Counterclaim Compl. ¶ 14, Dkt. No. 15. Other Interlink showerheads contain water flow regulators that maintain a water flow rate of 2.5 g.p.m., but also include instructions explaining how to remove the regulator and increase the rate. Id. ¶¶ 17-19, 20-23. The instructions read:

> Low Water Pressure? You can remove Water Flow Regulator
>
> As mandated by U.S. federal law, this shower head is equipped with water flow regulator that limits maximum water flow to 2.5 gallons (9.5liters) per minute at 80 psi water pressure. In areas with extremely low water pressure causing the shower water flow to be unsatisfactory the flow regulator may be removed to improve the water flow in the shower head.

Id., Ex. B at 2. The instructions then explain the removal process. Interlink also advertises that its showerheads have LED lights that last for 100,000 hours, but consumers have complained that the lights only last for a few weeks. Id. ¶ 38-39.

In support of its claims, Cathy Trading attached pictures of Interlink's online advertisements claiming the products have a 2.5 g.p.m. flow rate and LED lights that last 100,000 hours, a product manual containing the water flow regulator removal instructions, and screen

captures of customer reviews stating that the water flow regulator can be removed and that the LED lights died shortly after purchase. See Counterclaim Compl. Ex. C at 4-5; id. Ex. D at 6.

Cathy Trading claims that Interlink engaged in (1) false advertising under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), (2) unfair and deceptive practices under the New Jersey Consumer Fraud Act ("NJCFA") N.J.S.A. §§ 56:8-1, et seq., and (3) common law unfair competition. Cathy Trading seeks monetary damages and injunctive relief.

On July 18, 2016, Interlink filed the instant motion to dismiss all three counterclaims.

## II. LEGAL STANDARD

When considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all of the facts in the complaint and draws all reasonable inferences in favor of the plaintiff. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). Dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." Id. The facts alleged, however, must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id. Accordingly, a complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## III. ANALYSIS

### A. NJCFA Claim

Interlink asserts that the NJCFA claim must be dismissed because Cathy Trading, a commercial competitor, is not a "consumer" within the meaning of the statute. The Court agrees.

The NJCFA "provides relief to consumers from fraudulent practices in the market place."[1] Lee v. Carter-Reed Co., 203 N.J. 496, 521 (2010) (internal citation and quotes omitted). Neither the statute nor the New Jersey Supreme Court has explained with any precision who constitutes a consumer. However, "the entire thrust of the Act is pointed to products and services sold to consumers in the popular sense." Cetel v. Kirwan Fin. Grp., Inc., 460 F.3d 494, 514 (3d Cir. 2006) (internal citation and quotes omitted). Thus, the NJCFA "is not intended to cover every transaction that occurs in the marketplace"; rather, "[i]ts applicability is limited to consumer transactions which are defined both by the status of the parties and the nature of the transaction itself." Id. (internal citation and quotes omitted).

Several courts in this district have recently concluded that commercial competitors do not have standing under the NJCFA because they are not consumers in the popular sense of the word. See Interlink Prod. Int'l, Inc. v. F & W Trading LLC, No. 15-1340, 2016 WL 1260713, at *10 (D.N.J. Mar. 31, 2016); Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH, No. 10-453, 2010 WL 5239238, at *9 (D.N.J. Dec. 16, 2010); Holt's Co. v. Hoboken Cigars, LLC, No. 09-3782 2010 WL 4687843, at *2 (D.N.J. Nov. 10, 2010); IDT Telecom, Inc. v. CVT Prepaid Solutions, Inc., No. 07-1076, 2009 WL 5205968, at *6 (D.N.J. Dec. 28, 2009); Specialty Ins.

---

[1] The Act prohibits

> [t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby .
> . . .

N.J. Stat. Ann. § 56:8-2.

Agency v. Walter Kaye Assocs., Inc., No. 89-1708, 1989 WL 120752, at *5 (D.N.J. Oct. 2, 1989). That is, they do not suffer consumer-like injuries. They do not directly purchase their competitor's goods for bona fide use, so they are not "victimized by being lured into a purchase through fraudulent, deceptive or other similar kind of selling or advertising practices." Church & Dwight, 2010 WL 5239238, at *10-11 (internal citations and quotes omitted).

Here, Cathy Trading is not a consumer under the NJCFA because it has not alleged a consumer-like injury. It competes with Interlink for the sale of showerheads, and the harm it claims to have suffered—lost sales—emanates from that competitive relationship. Thus, Cathy Trading lacks standing to sue under the NJCFA.

Cathy Trading's counterarguments are unpersuasive. It does not contest its status as a commercial competitor. Rather, it maintains that commercial competitors should have standing under the NJCFA even if they do not suffer a consumer-oriented injury. Courts in this district have countenanced that argument before. See, e.g., 800-JR Cigar, Inc. v. GoTo.com, Inc., 437 F. Supp. 2d 273, 295-96 (D.N.J. 2006) (acknowledging that "[c]onsumers and commercial competitors have standing to bring claims under the NJCFA" but finding that plaintiff was neither); Gen. Dev. Corp. v. Binstein, 743 F. Supp. 1115, 1131 (D.N.J. 1990) (same). But as the Hon. Freda L. Wolfson, U.S.D.J., persuasively noted recently in Church & Dwight, those cases discussed competitor standing in dicta, and there is no support for that proposition in New Jersey case law. Church & Dwight, 2010 WL 5239238, at *9-11; see also Interlink, 2016 WL 1260713, at *9 (following Judge Wolfson's decision too). Cathy Trading also relies heavily on Glaxosmithkline Consumer Healthcare, L.P. v. Merix Pharm. Corp., No. 05-898, 2005 WL 2230318, at *9 (D.N.J. Sept. 13, 2005) (Debevoise, J.), aff'd, 197 F. App'x 120 (3d Cir. 2006).

Although the court in that case allowed an NJCFA claim to proceed between competitors, neither party raised standing. Absent such discussion, Glaxosmithkline is not helpful.

Cathy Trading then argues that Interlink should be judicially estopped from arguing against competitor standing because it argued in favor of it in two prior cases. See Interlink, 2016 WL 1260713; Interlink Prods. Inter'l, Inc. v. HDS Trading Corp., No. 15-1642 (D.N.J.). That is not enough to warrant judicial estoppel. Inconsistencies in different proceedings "are not sanctionable unless a litigant has taken one or both positions in bad faith . . . ." Montrose Med. Grp. Participating Sav. Plan v. Bulger, 243 F.3d 773, 781 (3d Cir. 2001) (internal citations and quotes omitted). Since "bad faith must be based on more than the existence of an inconsistency," id., Cathy Trading's estoppel argument fails—especially because both times Interlink argued in favor of competitor standing before, it lost. See Interlink, 2016 WL 1260713, at *9-10; Interlink, No. 15-1642, Dkt. No. 57 ("Memorandum and Order") at 7-9. See also Montrose, 243 F.3d at 782 ("[I]t does not constitute bad faith to assert contrary positions in different proceedings when the initial claim was never accepted or adopted by a court or agency."). Cathy Trading's NJCFA claim is dismissed with prejudice.

### B. False Advertising

Next, Interlink seeks dismissal of Cathy Trading's Lanham Act false advertising claims.

Section 43(a) of the Lanham Act prohibits advertising and promotional activities that "misrepresent[ ] the nature, characteristics, qualities, or geographic origin of [a person's] goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). Unlike the NJCFA, section 43(a) provides a private remedy to commercial competitors. Joint Stock Soc'y v. UDV N. Am., Inc., 266 F.3d 164, 180 (3d Cir. 2001) ("Section 43(a) is intended to provide a private remedy to a

commercial plaintiff who meets the burden of proving that its commercial interests have been harmed by a competitor's false advertising.") (internal citation and quotations omitted).

To state a false advertising claim under section 43(a), a plaintiff must allege: "(1) that the defendant has made false or misleading statements as to his own product [or another's]; (2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) that the deception is material in that it is likely to influence purchasing decisions; (4) that the advertised goods traveled in interstate commerce; and (5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc." Warner-Lambert Co. v. Breathasure, Inc., 204 F.3d 87, 91-92 (3d Cir. 2000). The parties' dispute turns on the first element.

Cathy Trading alleges that Interlink's claim on several ecommerce websites that its showerheads' LED lights "have long life of 100,000 hours" is false because the lights do not last that long. Counterclaim Compl. ¶¶ 38-41; id. Ex. D at 1. Cathy Trading also alleges that Interlink's claim that its showerheads have a 2.5 g.p.m. flow rate is false. See, e.g., Counterclaim Compl. ¶ 36; id. Ex. A at 3; id. Ex. C at 3. Although not clear from its pleadings, Cathy Trading appears to assert it is false for two reasons: (1) as of June 2015, Interlink's showerheads had a higher flow rate, and (2) as of late 2015, Interlink's redesigned showerheads can have a higher flow rate if consumers follow the product manual's instructions for removing the water flow regulator. Counterclaim Compl. ¶¶ 14-17.

To state a claim based on these statements, Cathy Trading must allege that they are either "(1) literally false or (2) literally true or ambiguous, but [have] the tendency to deceive consumers." Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co., 290 F.3d 578, 586 (3d Cir. 2002) (citing Castrol Inc. v. Pennzoil Co., 987 F.2d 939, 943 (3d Cir.

1993)). Proof of literal falsity relieves the plaintiff of its burden to prove actual consumer deception. Id.

"A determination of literal falsity rests on an analysis of the message in context." Johnson & Johnson–Merck Consumer Pharm. Co. v. Rhone–Poulenc Rorer Pharm., Inc., 19 F.3d 125, 129 (3d Cir. 1994). In deciding whether an advertising claim is literally false, a court must decide first whether the claim conveys an unambiguous message and second whether that unambiguous message is false. Novartis, 290 F.3d at 586. "A 'literally false' message may be either explicit or 'conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated.'" Id. at 586-87 (internal citation omitted). Unless the claim is unambiguous, however, it cannot be literally false. Id. at 587. "'The greater the degree to which a message relies upon the viewer or consumer to integrate its components and draw the apparent conclusion . . . the less likely it is that a finding of literal falsity will be supported.'" Id. (internal citation omitted).

The Court turns first to the whether the light and flow rate claims are literal. They are. They are explicit because they precisely define the showerhead's flow rate and the light's usable life. They are unambiguous because they measure those claims in terms of verifiable units of measurements: gallons per minute and hours. There are no apparent conclusions or competing meanings to draw from the claims. Thus, "[t]here is only one available conclusion and only one plausible meaning—the claim means exactly what the reference on the [websites] says it does." Groupe SEB USA, Inc. v. Euro-Pro Operating LLC, 774 F.3d 192, 200 (3d Cir. 2014).

8

The next question is whether Cathy Trading has sufficiently alleged that these two claims are false.[2]  It has as to the LED lights, but it has not as to water flow rates.

Cathy Trading has sufficiently pled falsity as to the LED lights.  Cathy Trading identifies the particular statement and the websites on which it appeared, explains why it is false, and submits consumer reviews corroborating its position.  See Counterclaim Compl. ¶¶ 38-41; id. Ex. D at 6.  This allegation is plausible, and it is particular enough to fairly apprise Interlink of the claim it must defend.  It will not be dismissed.

But Cathy Trading fails to establish why the advertised water flow rate is false.  The first reason why the claim is false—i.e., that Interlink previously designed certain showerheads with too high a flow rate—suffers from a lack of genuine factual allegation.  The plausibility standard is not a rigorous one, but it requires more than "naked assertion[s], devoid of further factual enhancement."  Iqbal, 556 U.S. at 678 (internal quotations and citations omitted).  Here, the entirety of the allegation is encompassed in a single sentence:  "As of June 26, 2015, some Interlink's [sic] showerheads do not comply with the Energy Policy Act's 2.5 gpm flow limit, but put out significantly more water than is permitted by the Act."  Counterclaim Compl. ¶ 14.  This is insufficient.  It is unclear whether Cathy Trading intends to allege that all of Interlink's showerheads were not EPA compliant or merely some.  And the Court cannot discern which of Interlink's several showerhead product lines were allegedly noncompliant.  Cathy Trading must replead this claim.

---

[2] There is some disagreement in this district over whether false advertising claims under the Lanham Act are subject to Rule 8's plausibility standard, Rule 9's particularity requirement, or fall somewhere in between.  See Rockwell Automation, Inc. v. Radwell Int'l, Inc., No. 15-5246, 2016 WL 7018531, at *3 (D.N.J. Nov. 30, 2016).  The debate is immaterial here because Cathy Trading's insufficient claims fail to meet even Rule 8's requirements, but the sufficient ones surpass Rule 9's requirement.

Its second theory also fails, but for a different reason.  The second theory—i.e., that Interlink redesigned its showerheads with a regulator that maintained a 2.5 g.p.m. flow rate but provided instructions on how to remove it—is not a literal falsity.  As the Counterclaim Complaint acknowledges, these products have a 2.5 g.p.m. flow rate out of the box.  See id. ¶ 17.  As such, the product consumers receive is the same as the product Interlink advertises.

Cathy Trading argues that Interlink advertises that the flow rate can be altered because the product instruction manual explains how to remove the regulator.  But as Interlink correctly notes, instruction manuals are not advertisements or promotions.  See 15 U.S.C. § 1125(a)(1)(B) (prohibiting claims made only "in commercial advertising or promotion"); see also Interlink, 2016 WL 1260713, at *4 (D.N.J. Mar. 31, 2016) (dismissing false advertising claim based on showerhead instruction manual because "[s]tatements made inside the product's packaging, available to consumers only after the purchase has been made, do not affect the choice to purchase.") (quoting Gillette Co. v. Norelco Consumer Prods. Co., 946 F. Supp. 115, 135 (D. Mass. 1996)).[3]

Since this regulator removal theory is not literally false, Cathy Trading can survive dismissal only if it alleges that the claim "is literally true or ambiguous, but has the tendency to deceive consumers."  Novartis, 290 F.3d at 586; Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm., Inc., 19 F.3d 125, 129 (3d Cir. 1994) ("If a plaintiff does not prove the claim to be literally false, he must prove that it is deceptive or misleading, which depends

---

[3] Cathy Trading also argues that the instructions are "disguised advertising" because they are available online.  Opp'n Br. at 21-22.  It is unclear how such allegations could give rise to false advertising, but the Court need not reach that question.  Since Cathy Trading did not allege these facts in its Counterclaim Complaint, it cannot rely on them to survive dismissal.  Clements v. Sanofi-Aventis, U.S., Inc., 111 F. Supp. 3d 586, 601 (D.N.J. 2015) ("[I]nadequate factual allegations in a complaint are not remedied by statements in the plaintiffs briefs.").

on the message that is conveyed to consumers."). Cathy Trading cannot do so. That is because its theory does not involve consumer deception. The theory's central point is that consumers will buy Interlink showerheads because they know that those showerheads have removable regulators and thus will provide a higher flow rate. The consumers are not deceived; rather, they allegedly seek out Interlink's products precisely because they are capable of such post-sale modification. That is not false advertising.

### C. Unfair Competition Claims

Lastly, Interlink moves to dismiss Cathy Trading's unfair competition claim. The parties reassert many of the same arguments here as under the Lanham Act. As such, the Court reaches the same conclusions because unfair competition claims "generally parallel those under § 43(a) of the Lanham Act." Interlink, 2016 WL 1260713, at *5 (quoting Bracco Diagnostics, Inc. v. Amersham Health, Inc., 627 F. Supp. 2d 384, 454 (D.N.J. 2009).

There is one exception, however: Cathy Trading's regulator removal theory. Since that claim does not fall under the Lanham Act's false advertising rules as a matter of law, the Court will address whether it states a claim under unfair competition.

Unfair competition affords broader protections than the Lanham Act. Holiday Inns, Inc. v. Trump, 617 F. Supp. 1443, 1466 (D.N.J. 1985) ("It is possible to be guilty of unfair competition even when trademark infringement is not present . . . ."). "There are fewer restrictions for a showing of unfair competition, and more leeway in the exercise of the court's equitable power. Id. (internal citations omitted). "The amorphous nature of unfair competition makes for an unevenly developed and difficult area of jurisprudence," but at heart it "seeks to espouse some baseline level of business fairness." Avaya Inc., RP v. Telecom Labs, Inc., 838 F.3d 354, 386 (3d Cir. 2016) (quoting Ryan v. Carmona Bolen Home for Funerals, 775 A.2d 92, 95 (N.J. Super. Ct. App. Div.

2001)). "The essence of the law of unfair competition is fair play." Holiday Inns, 617 F. Supp. at 1466 (internal citations omitted).

Applying these standards, Cathy Trading has not alleged unfair competition based on the regulator removal theory. Cathy Trading contends that Interlink is not playing fairly because it instructs consumers how to violate the EPA's requirements. But, as Interlink notes, the standards promulgated under section 6295(j) of the EPA apply to showerhead manufacturers, not to private consumers, and especially not to consumers who make wish to make post-sale modifications of their showerheads, cf. 42 U.S.C. § 6302(a) (explaining Act's application to manufacturers). Cathy Trading has not provided any authority—under the EPA or any other statute or regulation—in support of its claim that consumers are prohibited from doing so. In fact, it makes sense that consumers should be able to do so. Based on common sense and experience, water pressure varies from house to house, region to region. When a consumer installs a showerhead in a home that has a water flow rate below 2.5 g.p.m. or water pressure below 80 p.s.i. (the standard units of water flow and pressure under the EPA, see 42 U.S.C. § 6295(j)), they may need to remove the regulator to make the showerhead work. Indeed, the online reviews in Cathy Trading's own exhibits demonstrate this. One customer, for example, explains that her shower had insufficient water flow, so the showerhead did not work until she removed the regulator. See Counterclaim Compl. Ex. C at 4. Accordingly, Cathy Trading has not demonstrated unfair conduct. Its regulator theory of unfair competition is dismissed.

### IV. CONCLUSION

For the reasons set forth herein, Interlink's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. An appropriate Order accompanies this Opinion.

*/s Madeline Cox Arleo*
**MADELINE COX ARLEO**

                                              **United States District Judge**